UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

Joseph RICHARD-ANTONIO,

                                        Petitioner,

          -against-

Elizabeth A. O'MEARA,

                                        Respondent.

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 5/21/2013

12-CV-05174 (LAK)(SN)

**REPORT AND
RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

**TO THE HONORABLE LEWIS A. KAPLAN:**

*Pro se* petitioner Joseph Richard-Antonio, alleging that he is being held in state custody in violation of his federal constitutional rights, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "petition"). After a jury trial, Richard-Antonio was convicted of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law ("Penal Law") § 265.02(1)), Criminal Possession of a Forged Instrument in the Second Degree (Penal Law § 170.25) and Unlicensed Driving (Veh. & Traf. Law § 509(1)). (See Declaration in Support of Respondent's Motion to Dismiss Without Prejudice (Resp. Decl.) ¶ 2.) As a second felony offender, Richard-Antonio was sentenced to an indeterminate prison term of 3½ to 7 years on the weapons and forged instrument counts and to time served on the unlicensed driving count. (Resp. Decl. ¶ 2 & Ex. A.) Because his claims are unexhausted due to a pending state court appeal, I recommend that Richard-Antonio's petition for *habeas corpus* relief be DENIED without prejudice to his filing a new petition after he has exhausted his state court remedies.

## BACKGROUND

On April 7, 2010, Richard-Antonio was convicted in the Supreme Court of the State of New York, County of New York. (Id.) He has subsequently challenged that conviction in state and federal court proceedings.

### I.      State Proceedings

On December 17, 2009, before his trial commenced, Richard-Antonio filed a writ of *habeas corpus* in the New York County Supreme Court. (Resp. Decl. ¶ 6 & Ex. B.) On April 7, 2010, after Richard-Antonio had been tried and convicted before the Honorable Patricia Nunez, the Honorable Juan M. Merchan denied the writ. (Resp. Decl. ¶ 6 & Ex. C.) Justice Merchan summarized the grounds for the writ as: (1) the government failed to produce the victim's verified complaint; (2) the government failed to produce a Grand Jury certificate and arrest warrant; (3) the government failed to prove a legitimate claim against Richard-Antonio; (4) Richard-Antonio was denied his right to testify before the grand jury; (5) Justice Melkonian acted with "prejudice and misconduct" in allowing the government to proceed on "frivolous accusations and fraudulent practices" and by refusing to remove Richard-Antonio's counsel; and (6) Justice Stone acted with "prejudice and bias misconduct" in forcing Richard-Antonio to sign Sex Offender Registration Act ("SORA") documents and imposing a non-monetary bail condition. (Id.)

First, Justice Merchan found that because Richard-Antonio had "been tried and found guilty, issues relating to pre-trial bail or the alleged conditions of pre-trial incarceration [were] rendered moot." (Resp. Decl. ¶ 7 & Ex. C.) Second, Richard-Antonio's claim that he was denied the right to testify in the grand jury was not properly raised in a *habeas corpus* petition but, rather, should have been raised in a motion pursuant to N.Y. Crim. Proc. Law ("CPL") § 190.50.

(Id.) Third, Richard-Antonio was properly required to register under the SORA because he previously had been convicted of rape. (Id.) Finally, Richard-Antonio's remaining contentions were without merit or not properly before the Court. (Id.)

Richard-Antonio then moved to vacate his judgment of conviction pursuant to CPL § 440.10. On December 2, 2012, Justice Nunez denied this motion. (Resp. Decl. ¶ 8 & Ex. D.) Justice Nunez summarized the grounds for Richard-Antonio's motion as: (1) his (third) counsel was "forced" upon him and his conviction therefore was procured through duress; (2) the state court violated his constitutional rights in rejecting his request to defend himself; (3) the delay in producing him for a *habeas corpus* hearing violated his due process rights; and (4) his filing of a Uniform Commercial Code ("UCC") Financing Statement conferred special status on him as a "sovereign person immune to the laws of the State of New York." (Id.) Justice Nunez denied Richard-Antonio's motion to vacate his judgment because sufficient facts appeared on the record to permit appellate review. (Id.)

Justice Nunez also found that Richard-Antonio's claims themselves were without merit. (Resp. Decl. ¶ 9 & Ex. D.) First, "at no point did [Richard-Antonio] state that he did not want a lawyer because he wanted to represent himself. According to defense counsel and the prosecutor, this case was sent for trial from another court part in which [he] rejected the opportunity to proceed *pro se* when presented with the option to do so, retain private counsel or continue with his third assigned counsel." (Id.) Justice Nunez explained:

> [Richard-Antonio] then couched his request to gain yet another (fourth) attorney before this court on the basis of his current counsel not showing him a license, having an unsupported "conflict of interest", and [Richard Antonio] having filed complaints against him. While [Richard-Antonio] stated that he had a right to represent himself and that this court "could not force counsel" on him, he did not assertively state that he wanted to proceed *pro se*. His use of the term "in propria persona" was a confused attempt to have his counsel dismissed from the case and new counsel appointed. It was not the unequivocal, voluntary, intelligent and

3

clearly invoked request that the court requires in order to allow a defendant to proceed *pro se*. Thus the motion to vacate on the ground that his conviction was unconstitutional and obtained under duress is denied.

(Id.)

Justice Nunez further found that Richard-Antonio's claim that the failure to produce him for a *habeas corpus* hearing violated his due process rights was barred under CPL § 440.10(2)(b) and meritless because the *habeas* proceeding was a separate civil proceeding that did not affect his criminal trial. (Resp. Decl. ¶ 10 & Ex. D.) "Therefore, a delay in producing him for a hearing on the *habeas corpus* motion [was] not a ground for vacating [his] judgment." (Id.) Finally, Justice Nunez held that Richard-Antonio's filing of a UCC Financing Statement was "wholly irrelevant to these proceedings and confer[red] no special status on [him] in this case." (Id.)

On April 3, 2012, Richard-Antonio filed a motion for a writ of error *coram nobis* in the New York County Supreme Court challenging the state court's exercise of jurisdiction over his person and over the criminal proceeding. (Resp. Decl. ¶ 11 & Ex. E.) That same day, he filed a "Motion to Vacate Void Judgment," which also appeared to challenge the state court's ability to exercise personal and subject matter jurisdiction over him. (Resp. Decl. ¶ 11 & Ex. F.) And he moved for a default judgment. (Resp. Decl. ¶ 11.) On September 13, 2012, Justice Nunez denied these three motions, explaining that "[t]he claim that the court lacked jurisdiction due to the sovereign nature of [Richard-Antonio] has no basis in fact or law and accordingly lacks merit." (Resp. Decl. ¶ 11 & Ex. G.)

To date, Richard-Antonio's appeal to the Appellate Division of the Supreme Court, First Department (the "Appellate Division"), from his April 7, 2010, conviction has not been heard.

## II.     Federal *Habeas Corpus* Petition

On May 6, 2011, Richard-Antonio filed a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. On June 2, 2011, that petition was dismissed because Richard-Antonio had not yet perfected his direct appeal to the Appellate Division. See Richards v. Fischer, 11 Civ. 03340 (DAB) (S.D.N.Y. May 6, 2011).

On July 2, 2012, Richard-Antonio filed this petition. (Docket Number ("Doc. No.") 1.) By order dated August 7, 2012, Chief Judge Loretta A. Preska directed that Richard-Antonio amend his petition, (Doc. No. 2), and on September 11, 2012, Richard-Antonio filed an amended petition, (Doc. No. 3), with an addendum following on October 17, 2012, (Doc. No. 6). On November 8, 2012, the Honorable Lewis A. Kaplan referred this matter to a magistrate judge for a report and recommendation, (Doc. No. 8), and on November 13, 2012, that referral was reassigned to me, (Doc. No. 11).

On December 18, 2012, respondent filed a motion for a more definite statement of Richard-Antonio's claims. (Doc. No. 18.) On December 28, 2012, Richard-Antonio filed his opposition in the form of a "Notice of Default & Motion to Award Writ of *Habeas Corpus*." (Doc. No. 21.) On January 9, 2013, respondent filed her reply to Richard-Antonio's brief. (Doc. No. 24.) On January 16, 2013, I denied respondent's motion, finding that she could prepare a response to the claims Richard-Antonio actually pled, and summarizing the Court's understanding of the four general bases for redress presented by Richard-Antonio's amended petition. (Doc. No. 25.) I also provided Richard-Antonio with an opportunity to object if he believed that the Court had misinterpreted his claims, (id.), but received no objection from him.

On February 15, 2013, respondent filed her motion to dismiss Richard-Antonio's petition. (Doc. No. 26.) On March 12, 2013, Richard-Antonio filed his opposition. (Doc. No. 30.) Shortly

after Richard-Antonio's filing, respondent informed the Court that she would not reply unless requested.

On April 1, 2013, after reviewing the parties' submissions, I ordered further briefing on the issue of whether Richard-Antonio's due process rights were violated because the Appellate Division had not yet addressed, and did not appear prepared to address, Richard-Antonio's appeal. (Doc. No. 31.) On April 25, 2013, Richard-Antonio opposed the order and requested immediate release. (Doc. No. 32.)

On April 30, 2013, respondent filed supplemental briefing on the issue, which included an affirmation from the Legal Aid Society ("Legal Aid") attorney who has been appointed to represent Richard-Antonio in his appeal. (Doc. Nos. 36-37.) The Legal Aid attorney states that her office received "portions of the record" on September 21, 2011, but that the majority of the record was not provided until February 2013. In light of these days, she "hope[s] to file [the brief] in May, 2013." (Declaration in Further Support of Respondent's Motion to Dismiss the Petition ("Resp. Supp. Decl.") at Ex. H. ¶¶ 3-4.) She explains that although a brief filed in May 2013 would be scheduled for argument or submission in the September 2013 Term, because of likely requests for adjournments by the District Attorney's Office, "the Appellate Division may not hear this appeal before February 2014." (Id. ¶ 5.) On May 17, 2013, Richard-Antonio submitted a response to this supplemental briefing. (Doc. No. 38.)

## DISCUSSION

Richard-Antonio petitions the Court for *habeas corpus* relief. Because Richard-Antonio has not fairly presented his constitutional claims through one complete round of state review, I recommend that his petition be denied, without prejudice, for failure to exhaust his state court appeal.

6

## I.      Statement of Law

Federal courts are required to liberally construe *pro se* litigants' *habeas* petitions. See Roldan v. Racette, 984 F.2d 85, 87 (2d Cir. 1993); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972). Before a petitioner is permitted to seek review from a federal court, however, he first must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 515 (1982). A claim is deemed exhausted if: (1) the petitioner fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) petitioner presented his claim to the highest state court which could hear his claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 845-48.

The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." O'Sullivan, 526 U.S. at 845; see also Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) ("[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." (citations omitted)). This doctrine is "founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries." Wood v. Milyard, __ U.S. __, 132 S. Ct. 1826, 1833 (2012) (citation omitted).

## II.      Exhaustion of Claim

In his petition for relief, Richard-Antonio alleges four general sources of constitutional violation: (1) ineffective assistance of counsel; (2) violation of his Fifth Amendment rights to a grand jury and due process; (3) malice and prejudice by the lower court in handling his state

*habeas corpus* petition; and (4) the state court or prison's lack of subject matter and personal jurisdiction. (Memorandum of Law in Support of Respondent's Motion to Dismiss the Petition for a Writ of *Habeas Corpus* ("Resp. Br.") at 4-5; see Doc. No. 25.) Because Richard-Antonio has not exhausted his existing state court remedies, the Court cannot analyze the merit of these allegations.

Richard-Antonio has not yet presented his claims to the highest state court that could hear his claim: indeed, his appeal from his criminal conviction is still pending before the Appellate Division. (Resp. Supp. Decl. ¶ 5 & Ex. H; Supplemental Memorandum of Law in Support of Respondent's Motion to Dismiss the Petition ("Resp. Supp. Br.") at 2); see Leshore v. Nassau Cnty. Sheriff's Dep't of Corr. Facility, 11 Civ. 02587 (SJF), 2012 WL 3260283, at *2 (E.D.N.Y. Aug. 7, 2012) ("As of the time the petition was filed, [petitioner] clearly had not exhausted his state remedies: his appeal was still pending before the Second Department and his motions to vacate were pending before the County Court."); Lublin v. Arnold, 442 F. Supp. 54, 55-56 (E.D.N.Y. 1977) ("As petitioner's appeal from the conviction in Nassau County District Court is presently pending, the petition for writ of *habeas corpus* is denied."); see also Doe v. Terrell, 09 Civ. 05834 (JCF), 2010 WL 743180, at *3 (S.D.N.Y. Feb. 25, 2010) ("Because the petitioner has not exhausted the state remedies that were available to him, *habeas* relief is barred at this time, and [petitioner']s *habeas corpus* petition [pursuant to 28 U.S.C. § 2241] is dismissed without prejudice to being refiled at such time as he complies with the exhaustion requirement."). Thus, Richard-Antonio's claims are not yet exhausted.

## III.    Exception to Exhaustion Requirement

Although Richard-Antonio has failed to exhaust his state remedies, a narrow exception to the exhaustion requirement can be found "if there is no opportunity to obtain redress in state

court or if the corrective process is so clearly deficient as to render futile any effort to obtain

relief." Duckworth v. Serrano, 454 U.S. 1, 3 (1981); see 28 U.S.C. § 2254(b)(1)(B)(i) & (ii).

### A.  Direct Appeal Delay

"[I]t is now clear in this circuit that substantial delay in the state criminal appeal process

is a sufficient ground to justify the exercise of federal *habeas* jurisdiction." Cody v. Henderson,

936 F.2d 715, 718-19 (2d Cir. 1991) ("[W]e have acknowledged that the right to a reasonably

timely appeal is included among the protections afforded by the due process clause when a state

does provide for an appeal."); see Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990); see

also Evitts v. Lucey, 469 U.S. 387, 393-94 (1985).

In cases involving the delay of a direct appeal, the Court of Appeals has expressed doubt

as to whether there exists a procedure to present such a claim to New York courts, meaning there

could be an "absence of a state corrective process" under 28 U.S.C. § 2254(b), which excuses the

exhaustion requirement. See Mathis v. Hood, 851 F.2d 612, 615 (2d Cir. 1988) ("Mathis I")

(stating that "there is no [New York] state remedy available to petitioner [regarding his delay of

appeal claim] and [] even if such remedy existed, circumstances render the state corrective

process ineffective"). Thus, the Court of Appeals has found the exhaustion requirement to be

satisfied in such cases, notwithstanding the failure to bring the appellate delay claim before the

state courts. See Brooks v. Jones, 875 F.2d 30, 31-32 (2d Cir. 1989); Mathis I, 851 F.2d at 615.

Richard-Antonio relies on Mathis I to support his claim for *habeas* relief. In Mathis I,

after waiting over six years for a decision on his appeal, the petitioner filed a writ for federal

*habeas corpus* relief. 851 F.2d at 614. The district court denied the writ on exhaustion grounds,

finding that the petitioner had not completed one full round of the appellate review process. Id.

On appeal, the Court of Appeals rejected the district court's view that the petitioner had failed to

exhaust his state remedies, and remanded the case to address the merits of the petitioner's due process claim. Id. at 615.

On remand, the district court found a due process violation and issued the writ. See Mathis v. Hood, 87 Civ. 06234 (RPP), 1990 WL 100869, at *2 (S.D.N.Y. July 11, 1990). The government appealed. The Court of Appeals reversed in part, finding that while the six-year delay violated the petitioner's due process rights under Barker v. Wingo, 407 U.S. 514 (1972), such delay, without more, was an insufficient basis for release from custody. Mathis v. Hood, 937 F.2d 790, 794 (2d Cir. 1991) ("Mathis II"). The Court of Appeals rejected the notion that the "mere lapse of time" justified a habeas petitioner's release from custody. Id.; see also Diaz v. Henderson, 905 F.2d 652, 653 (2d Cir. 1990); Simmons, 898 F.2d at 868. Rather, the petitioner must set forth "some showing of prejudice to the appeal" to be entitled to habeas relief. Mathis II, 937 F.2d at 794. Prejudice in this context, the Court of Appeals held, is "when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 669 (1984)).

Richard-Antonio argues that there has been inordinate delay of his appeal because it has taken the Appellate Division "approximately three (3) years to hear the matter." (Petitioner's Affidavit in Support of Opposition to Resp. Notice to Dismiss the Petition: Notice of Release ("Pet. Aff.") at 3.) To determine whether the delay violates due process and habeas relief is warranted, courts examine four factors: (1) was the delay in fact excessive; (2) if so, is there an acceptable excuse for such delay; (3) did petitioner assert his right; and (4) did prejudice ensue.

See Barker, 407 U.S. at 530; Elcock v. Henderson, 947 F.2d 1004, 1007 (2d Cir. 1991).[1] In

applying the Barker factors, "no one factor is dispositive and all are to be considered together

with the relevant circumstances." Simmons, 898 F.2d at 868; see Barker, 407 U.S. at 533. In

addition to these four factors, the Court also may weigh concerns of judicial comity. See Brooks,

875 F.2d at 32; Cameron v. LeFevre, 887 F. Supp. 425, 430 (E.D.N.Y. 1995) (collecting cases).

### (1)   Length of Delay

The Court of Appeals for the Second Circuit has not "define[d] precisely, a specific

interval of time after which a *habeas* petition based on delay . . . would excuse compliance with

the federal exhaustion requirement," but it has counseled that "[t]he doctrine of exhaustion . . .

does not require a prisoner to wait six years . . . or even three or four years before enlisting

federal aid . . . ." Simmons, 898 F.2d at 870; accord Diaz, 905 F.2d at 654 ("*habeas* petitions . . .

need to be brought as soon as the appellate delay becomes unreasonable"). "Nevertheless, . . . the

mere lapse of time is a[n] [in]sufficent bases for" *habeas* relief. Mathis II, 937 F.2d at 794.

Here, Richard-Antonio was convicted in April 2010. (Resp. Decl. ¶ 2.) His Legal Aid

attorney avers that she is "currently writing the brief [to appeal his conviction before the

Appellate Division] and hope[s] to file it in May, 2013." (Resp. Supp. Decl. at Ex. H ¶ 4.)

Richard-Antonio thus has waited over three years for his appeal to be heard and, indeed, because

of the adjournments typically requested by the New York County District Attorney's office, may

wait another year. (See id. ¶ 5.) This delay triggers due process concerns, but ultimately does not

violate the Constitution.

---

[1] The Barker factors go only to the question of whether there has been a due process violation: "[a]
separate and distinct inquiry, however, is required to determine the appropriate remedy for the violation;
some showing of prejudice to the appeal is necessary for *habeas* relief." Mathis II, 937 F.2d at 794
(citations omitted).

The delays in Richard-Antonio's appeal are not excessive in light of the following circumstances. First, almost an entire year is attributable to Richard-Antonio's own actions, and failures to act, that delayed the process. Among other motions, Richard-Antonio "moved for leave to prosecute the appeal as a poor person" and to proceed *pro se*. (See Resp. Supp. Decl. at Ex. I.) On July 20, 2010, these motions were denied by the Appellate Division, with leave to renew after Richard-Antonio submitted an affidavit "setting forth the amount and sources of funds to post [his] $25,000 bail in the Supreme Court, the disposition thereof, and an explanation as to why similar funds [were] not available to prosecute the appeal," and setting forth that he understood the consequences of proceeding *pro se*. (Id.) On October 5, 2010, Richard-Antonio renewed his motion to proceed "as a poor person," which again was denied because he did not submit the required affidavit that would allow the Appellate Divisions to determine whether he qualified as a "poor person." (Resp. Supp. Decl. at Ex. J.) On December 16, 2010, Richard-Antonio again renewed his motion, which again was denied because he still had not submitted the required affidavit. (Id.) [2]

This motion practice explains why the Legal Aid Society was not appointed until nearly a year after Richard-Antonio filed his notice of appeal. Because this lost time is attributable to Richard-Antonio, it does not establish undue delay. See Charleston v. Gonyea, 11 Civ. 05694 (KBF), 2013 WL 1156085, at *5 (S.D.N.Y. Mar. 20, 2013) (denying undue delay claim when, *inter alia*, majority of delay was attributable to choices made by petitioner); Williams v. Comm'r

---

[2] In his supplemental reply, Richard-Antonio attributes this delay to the "[district] attorneys['] frivolous inquiries." (Memorandum of Authority in Support of Opposition to Respondent Declaration in Further Support Motion to Dismiss the Petition ("Pet. Supp. Br.") at 2 (emphasis in original).) But as shown from the documents he submitted, the delay actually was attributable to his repeated refusal to submit the proper affidavit explaining the source of his bail. Moreover, even if Richard-Antonio is correct that the "[district attorney office] was well aware of the source of the bail," (Pet. Supp. Br. at 4-5), this awareness still would not have addressed the Court's concern over whether he had the funds to pursue an appeal. Therefore, it does not establish bad faith. (Cf. Pet Supp. Br. at 5.)

N.Y.S. Dep't of Corr., 07 Civ. 05496 (WHP)(FM), 2011 WL 5301766, at *24 (S.D.N.Y. Oct. 31, 2011) (finding petitioner "caused much of the remaining delay by the filing of his motion to submit a supplemental *pro se* brief and the sequelae thereto"), adopted by 2011 WL 6182364 (S.D.N.Y. Dec. 12, 2011); Van Stuyvesant v. Conway, 03 Civ. 03856 (LAK), 2007 WL 2584775, at *42 (S.D.N.Y. Sept. 7, 2007) ("Even assuming the appellate process could be fairly characterized as substantially delayed, it is reasonable to conclude that, in light of the record presented, which Petitioner does not credibly dispute, Petitioner's own actions caused the delay."); Vasquez v. Reynolds, 00 Civ. 00862 (RMB)(KNF), 2002 WL 417183, at *7 (S.D.N.Y. Mar. 18, 2002) (finding delay could not be attributable to state court alone when part "of the delay . . . [was] attributable to petitioner's own applications to change counsel"); see also Boyer v. Louisiana, 133 S. Ct. 1702, 1703 (2013) (mem.) (per curiam) (Alito, J., concurring in dismissal of writ of *certiorari* as improvidently granted) (discussing, in speedy trial context, that "the single largest share of the delay . . . was the direct result of defense requests for continuances, that other defense motions caused substantial additional delay, and that much of the rest of the delay was caused by events beyond anyone's control").

Second, since Legal Aid counsel was appointed on March 29, 2011, (Resp. Supp. Decl. ¶ 3), Richard-Antonio has encountered numerous delays in obtaining portions of the state transcripts, (Resp. Supp. Decl. at Ex. H ¶¶ 3-4). Although these delays arguably are attributable to the state, in this case they also are insufficient to cause an inordinate delay that violates Richard-Antonio's due process rights. See Vazquez v. Bennett, 00 Civ. 03070 (AKH), 2002 WL 619282, at *5 (S.D.N.Y. Apr. 17, 2002) (finding "four-year delay in deciding petitioner's direct appeal did not violate his due process right"); Vasquez, 2002 WL 417183, at *6-7 (finding delay in appeal of four years and nine months, "while certainly longer than ideal, is shorter than the

delay in most cases in which the U.S. Court of Appeals for the Second Circuit has found a denial

of due process"; "[f]urther delay was caused by reasonable decisions of [petitioner's] counsel to

seek extensions  . . . to enlarge the record"); cf. Simmons, 898 F.2d at 870 (finding six year delay

in state court's consideration of petitioner's criminal appeal constituted inordinate delay).

### (2)    Acceptable Excuse

Although the "ultimate responsibility for [delay] must rest with the government rather

than with the defendant," a "more neutral reason [for delay] such as negligence or overcrowded

courts" is weighed less heavily than a deliberate attempt by the government to delay

proceedings. Barker, 407 U.S. at 531. Here, the majority of the delay was caused by a fairly

"neutral" cause: the court reporters' tardy productions of transcripts. Thus, this factor does not

support finding a due process violation. See Flowers v. Warden, Conn. Corr. Inst., Somers, 853

F.2d 131, 134 (2d Cir. 1988) (finding no speedy trial violation when, *inter alia*, "there was

nevertheless no bad faith, negligence, or tactical maneuvering by the state"); Campbell v.

Greene, 440 F. Supp. 2d 125, 144 (N.D.N.Y. 2006) ("Since there is no evidence that the State

sought to delay [petitioner]'s trial in an attempt to hamper petitioner's defense, this factor does

not weigh in his favor."); Vaughn v. Giambruno, 03 Civ. 05403 (WHP)(THK), 2005 WL

1995391, at *7 (S.D.N.Y. Aug. 19, 2005) (finding no speedy trial violation when, *inter alia*,

"there is no evidence that the prosecution intentionally caused the delay complained of, or used

the delay to disadvantage Petitioner").

### (3)    Diligence in Asserting Right

"A petitioner does not waive his right to a timely appeal when he diligently seeks to

assert that right." Brown v. Costello, 00 Civ. 06421 (RCC)(MHD), 2004 WL 1837356, at *3

(S.D.N.Y. Aug. 17, 2004) (citation omitted and emphasis supplied). "Factors indicative of

whether a petitioner has sought to assert his right to a speedy appeal include: (1) whether the petitioner takes steps to obtain counsel, (2) whether the petitioner regularly inquires of his counsel or the court about the delays in his appeal, and (3) whether the petitioner files a grievance against his appointed counsel." Id.

Here, rather than diligently asserting his rights, Richard-Antonio has exerted minimal effort to obtain a prompt resolution of his appeal. He discusses that there has been delay because the Appellate Division was taking "approximately three (3) years to hear the matter." (Pet. Aff. at 3; Petitioner's Memorandum of Authority in Support of Opposition to Respondent Notice to Dismiss the Petition: Motion to Release ("Pet. Br.") at 6-9.) But after making this assertion, Richard-Antonio returns to the apparently central concern of his petition: that the Appellate Division "forced upon [him] an attorney despite the repeated request(wish) to proceed 'In Propia Persona.'" (Pet. Aff. at 4 (emphases in original); see Pet. Br. at 6-7 (repeatedly discussing similar concerns); Pet. Supp. Br. at 3-5 (same).) Richard-Antonio has not "diligently" sought to assert his due process right to an appeal free from undue delay.

        **(4)    Prejudice**

Even if the Court were to conclude that Richard-Antonio's due process rights are violated by an appellate delay of more than three (and likely four) years – and given his 3½ to 7 year sentence, such a delay is certainly on the cusp of such a finding – Richard-Antonio has not established prejudice. He argues that his state court applications were made "under duress and out of necessity due to the lack of resources to address the instant matter adequately." (Pet. Aff. at 3.) But he does not allege that his duress was the result of appellate delay. Moreover, his complaints lack any factual specificity that would enable the Court to determine that "there is a reasonable probability that, but for the delay, the result of the appeal would have been different."

Mathis II, 937 F.2d at 794 (citing Strickland, 466 U.S. 668); see Avent v. Napoli, 08 Civ. 00932

(VB)(LMS), 2013 WL 1788626, at *16 (S.D.N.Y. Feb. 7, 2013) (finding no prejudice when

petitioner failed to support "allegations [of appellate delay] with any specificity or evidence");

Vazquez, 2002 WL 619282, at *4 (finding no prejudice when petitioner claimed "numerous

'personal problems' related to his continued incarceration during the appeal period," but did not

allege anything "specific"). The court is aware of the inherent impairment of a defense upon

retrial caused by the passage of time, namely the loss of memory by witnesses and the staling of

evidence. See Barker, 407 U.S. at 532 ("Loss of memory . . . is not always reflected in the record

because what has been forgotten can rarely be shown."). But absent any showing that these

issues are present, the Court cannot assume prejudice on the basis of delay alone. Accordingly,

Richard-Antonio has not demonstrated the prejudice he must in order to justify the extraordinary

remedy of unconditional release.[3]

　　　　To the extent Richard-Antonio seeks a remedy for the psychological injury he has

suffered as a result of this delay, "[h]abeas corpus . . . is a remedy designed only to relieve

prisoners from illegal custody . . . . Anxiety, even when unconstitutionally inflicted, is harm of a

personal nature. It is redressed more appropriately, if at all under 42 U.S.C. § 1983 or under state

law." Diaz, 905 F.2d at 654. Richard-Antonio's claimed "duress" is not an injury that a writ of

habeas corpus is designed to relieve.

---

[3] Should Richard-Antonio complete his sentence before he has exhausted his direct appeal, he may be
entitled to pursue a civil case for damages. See Poventud v. City of New York, __ F.3d __, 12-cv-1011,
2013 WL 1693952, at *3 (2d Cir. Apr. 19, 2013) (a plaintiff challenging the constitutionality of his
conviction or incarceration who is no longer in custody may assert claims under 42 U.S.C. § 1983, and
such claims are not barred under Heck v. Humphrey, 512 U.S. 477 (1994)).

### (5)    Comity

Finally, even if the Court were to find that the appellate delay was egregious, "[w]hen a previously-stalled state . . . proceeding has come to life . . . , it is appropriate for a federal court to give the state appellate courts an opportunity to hear the claims in the first instance." Swain v. Murphy, 08 Civ. 01394 (RNC), 2010 WL 1279051, at *2 (D. Conn. Mar. 26, 2010) (explaining that state *habeas* proceeding had "gone to trial" and a decision had been issued on the merits (citing Wallace v. Dragovich, 143 F. App'x 413, 418-19 (3d Cir. 2005))); see Pollack v. Patterson, 10 Civ. 06297 (JGK)(JLC), 2011 WL 6747409, at *2 (S.D.N.Y. Dec. 23, 2011) (finding there "plainly" were "ongoing hearings on the underlying merits of the plaintiff's claim . . . . [and thus] [u]nlike in the 'inordinate delay' cases . . . proceedings in the plaintiff's case [were] active"); see also Brooks, 875 F.2d at 32 (although finding it was "imperative to take some action toward the end [of] the problem of lengthy delays," the Court of Appeals also noted that it was "loath under any circumstances to undertake a review of the complaints [the petitioner made] regarding his state convictions if the state [was] about to do so"). Here, Richard-Antonio's appeal is poised to be perfected and, thus, the interest in state-federal comity favors allowing the Appellate Division to hear his claims first.

Indeed, were the Court to rule in Richard-Antonio's favor, the remedy would be to order the Appellate Division to hear his appeal within a reasonable time period. See Mathis II, 937 F.2d at 796 ("[W]e have thus far approved only one remedy available to *habeas* petitioners who claim due process violations based on mere delay: the granting of a conditional writ earlier in the appellate process that requires release unless a time deadline for processing the appeal is met."). But it is improper to order the Appellate Division to hear Richard-Antonio's appeal when it is poised to do just that.

For these reasons, Richard-Antonio has not established an inordinate delay and prejudice that would justify waiving the requirement that he exhaust state court remedies before seeking federal *habeas* relief.

### B. Alternative Arguments for Waiving Exhaustion Requirement

Turning to his alternative arguments for waiving the exhaustion requirement, Richard-Antonio objects that an April 20, 2012 "Ex-parte Motion to Vacate [VOID] Judgment" and a June 5th, 2012 "Default Notice" were not ruled on by the state court, and therefore were exhausted, or could not have been exhausted. (Pet. Aff. at 2-3; Pet. Br. at 1-3; <u>see also</u> Pet. Br. at 10-14.) But the record shows that both motions were considered and then denied by order on September 13, 2012. (Resp. Decl. at Ex. G.) Thus, Richard-Antonio cannot plausibly argue that these motions were ignored and the proceedings therefore deficient.

Richard-Antonio also appears to argue that appellate courts will reject his claims, rendering futile his appeal. (<u>See</u> Pet. Aff. at 3; Pet. Br. at 12-14.) But "[i]t is well established that a petitioner may not bypass state courts merely because they may be unreceptive to the claim." <u>Jones v. Keane</u>, 329 F.3d 290, 295 (2d Cir. 2003); <u>see</u> <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) ("'[F]utility cannot constitute cause'" for procedural default because of failure to raise a claim on direct review, "if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 130 n.35 (1982)).

Finally, Richard-Antonio's remaining objections, such as a lack of subject matter and personal jurisdiction, (<u>see, e.g.</u>, Pet. Aff. at 5-6; Pet. Br. at 4-5, 8-10), do not excuse him from the requirement to exhaust. Richard-Antonio argues, generally, that his "*Habeas Corpus* petition was submitted predicated upon the STATE court[] failure to rebut point-for-point the challenge and

18

rebutted State Judgment." (Pet. Br. at 14.) But the exhaustion requirement ensures that the state actually has an opportunity to address a petitioner's objections before a federal court rules on an issue. See Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("A state prisoner is generally barred from obtaining federal *habeas* relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process." (emphasis supplied; citations and internal quotation marks omitted)). Dismissing Richard-Antonio's petition serves this purpose while concomitantly addressing Richard-Antonio's purported objection.

Richard-Antonio has an opportunity to obtain redress in state court, but has not shown the state's corrective process to be "so clearly deficient as to render futile any effort to obtain relief." His petition, therefore, does not fall within the narrow exception to the exhaustion requirement.

## IV.    Disposition of Unexhausted Claims

A final question is whether the petition should be dismissed or stayed. Mixed petitions – *habeas* petitions containing both exhausted and unexhausted claims – are eligible for "stay-and-abeyance" procedures, where "a district court might stay the petition . . . while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." Rhines v. Weber, 544 U.S. 269, 275-76 (2005). A petition containing only unexhausted claims, however, should be dismissed. See Coleman v. Thompson, 501 U.S, 722, 731 (1991) ("[The Supreme Court] has long held that a state prisoner's federal *habeas* petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). Such a dismissal does not bar a petitioner from bringing a future *habeas* petition for being second or successive. See Slack v. McDaniel, 529 U.S. 473, 487 (2000) ("[N]one of our

19

cases . . . have ever suggested that a prisoner whose *habeas* petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition." (citation omitted)).

Here, none of the claims in Richard-Antonio's petition has been exhausted, and thus he is ineligible for a stay-and-abeyance procedure. Rhines, 544 U.S. at 276. Dismissal, therefore, is appropriate. See Doe, 2010 WL 743180, at *3 ("Because the petitioner has not exhausted the state remedies that were available to him, *habeas* relief is barred at this time, and [petitioner]'s *habeas corpus* petition [pursuant to 28 U.S.C. § 2241] is dismissed without prejudice to being refiled at such time as he complies with the exhaustion requirement.").

## CONCLUSION

For these reasons, I recommend that Richard-Antonio's petition for *habeas corpus* relief be DENIED without prejudice to his filing a new petition after he has exhausted his state court remedies. Should the delays in Richard-Antonio's petition persist, however, at a certain point in the foreseeable future his case will warrant conditional relief. Because Richard-Antonio has not, at this time, made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

*       *       *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Kaplan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:      New York, New York
            May 21, 2013